# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **DARRYL HINES,** | : | **Case No. 1:06 CV 2233** |
| **Plaintiffs,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **SUBODH CHANDRA, et al.,** | : | **MEMORANDUM & ORDER** |
| **Defendants.** | : | |

This case arises on the Defendants' *Motion for Judgment as a Matter of Law* (Doc. 47) and

*Motion for Summary Judgment* (Doc. 52-2). The briefing on these motions has been extensive, and

they are ripe for adjudication.[1] For the reasons articulated below, the Court **GRANTS** the *Motion*

---

[1] In fact, the catalogue of briefing related to the pending motions borders on the absurd. It all started when the Defendants filed their *Motion for Judgment as a Matter of Law* (Doc. 47) as part of their response in opposition to the Plaintiff's *Motion to Stay or Hold Proceedings in Abeyance* (Doc. 46). Although the Court denied the Plaintiff's *Motion to Stay or Hold Proceedings in Abeyance*, the *Motion for Judgment as a Matter of Law* (Doc. 47) remained pending. In fact, even before the Court denied his motion to stay, the Plaintiff filed a *Motion to Convert Defendants' Motion for Judgment as a Matter of Law to a Motion for Summary Judgment and to Prohibit Defendants from Filing Additional Dispositive Motions* ("*Motion to Convert*") (Doc. 48). The Defendants opposed the *Motion to Convert* (Doc. 48). Several days later, the Defendants filed a motion captioned *Motion to Exceed Page Limitation for Memorandum in Support of Motion for Summary Judgment* ("*Motion to Exceed Page Limitation*") (Doc. 52). The *Motion to Exceed Page Limitation* included a *Motion for Summary Judgment* (Doc. 52-2) attached as Exhibit A according to the docket receipt. These two motions – the *Motion for Judgment as a Matter of Law* and *Motion for Summary Judgment* compelled each party to file briefs responsive to each motion, and spawned what might be described as a series of 'meta-motions' challenging various aspects of the previous filings. (*See Plaintiff's Rule 56(f) of the Federal Rules of Civil Procedure Motion and Affidavit* ("*Rule 56(f) Motion*") (Doc. 53); *Plaintiff's Memorandum in Opposition to Defendants' Motions for Judgment as a Matter of Law and for Summary Judgment* (Doc. 54; *Defendants' Brief in Opposition to the Plaintiff's Rule 56(f) of the Federal Rules of Civil Procedure Motion and Affidavit* (Doc. 55); *Defendants' Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion for Judgment as a Matter of Law* (Doc. 56); *Plaintiff's Objections to Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Judgment as a Matter of Law* (Doc. 57); *Plaintiff's Objections to Defendants' Exhibits* (Doc. 59) (referring to the exhibits attached to the Defendants' *Motion for*

*for Summary Judgment* (Doc. 52-2), rendering the *Motion for Judgment as a Matter of Law* (Doc. 47), and all other pending motions, moot.

## I.  BACKGROUND

This is a dispute over attorneys fees.  Plaintiff, Attorney Darryl Hines ("Hines"), claims that the Defendants, the City of Cleveland ("City") and certain individual City officials and employees,[2] wrongfully deprived him of attorneys fees to which he was contractually entitled.  The Defendants contend that Hines has no valid claim to the fees in question.

### A.  BRIEF FACTUAL BACKGROUND

The detailed factual history that gave rise to this legal issue is long and convoluted.  The essential facts relevant to this issue are relatively straight-forward, however, and are set forth as follows based on the parties' briefs and exhibits thereto.[3]

---

*Summary Judgment*); *Plaintiff's Brief and Memorandum Opposing Defendants' Motion for Summary Judgment* (Doc. 61); *Defendants' Brief in Opposition to Plaintiff's Objections to the Defendants' Exhibits* (Doc. 66); *Plaintiff's Reply to Defendants' Opposition to Plaintiff's Objections to Defense Exhibits* (Doc. 67); *Defendants' Reply Brief in Support of the Motion for Summary Judgment* (Doc. 68); *Defendants' Motion to File Supplemental Evidence in Support of Defendants' Motion for Summary Judgment* (Doc. 69); *Plaintiff's [Second] Motion to Stay or to Hold Proceedings in Abeyance* (Doc. 70); *Defendants' Brief in Opposition to Plaintiff's Second Motion to Stay or Hold Proceedings in Abeyance* (Doc. 71); *Plaintiff's Motion for Leave to File Supplemental Brief in Opposition to Defendants' Motion for Summary Judgment and Plaintiff's Objections to the Admission of Exhibit* (Doc. 72); *Defendants' Brief in Opposition to Plaintiff's Supplemental Brief* (Doc. 73); *Plaintiff's Reply to Defendants' Opposition to Plaintiff's Supplemental Brief* (Doc. 74).)  The Court has already ruled on all of the 'meta-motions' except Hines' *Rule 56(f) Motion*.  This motion is addressed below.

[2]  The individual City Defendants are:  Theodora Monegan (City Law Department), Kevin Gibbons (City Law Department), and James Glending (Commissioner of the Cleveland Convention Center).  They are being sued in their individual capacities.  Subodh Chandra (former Law Director for the City of Cleveland) is being sued in his official capacity.  (*See* Doc. 18.)  The City of Cleveland and the individual City Defendants will be referred to collectively in this Order as "the City Defendants."

[3]  Unless otherwise noted, the facts described in this section are undisputed.

Hines is an attorney who was employed by the City in its Law Department as Chief Assistant Director of Law for the Labor & Employment Section from September 25, 2000 until November of 2001. As part of his duties, Hines supervised assistant directors of law in litigation within the purview of the Labor & Employment Section.

Within a few months of leaving his job with the City Law Department, Hines began researching a potential violation of the Fair Labor Standards Act ("FLSA") by the City. Specifically, he began representing his brother-in-law regarding the City's alleged failure to properly pay overtime wages to certain City employees who worked as dispatchers at the Cleveland Convention Center ("City employee-dispatchers"). Seven months after leaving the City, Hines filed an FLSA action in the Cuyahoga County Court of Common Pleas on behalf of several City employee-dispatchers. The case was timely removed to federal court before Judge Donald Nugent ("FLSA Litigation No. 1").[4]

The City moved to disqualify Hines from representing the City employee-dispatchers based on his prior employment at the City Law Department and receipt of confidential information pertinent to the lawsuit while so employed. After conducting a hearing on the City's motion to disqualify Hines, Magistrate Judge Nancy Vecchiarelli recommended granting the motion on November 7, 2002. Her recommendation was essentially based on the finding that, as the City's former attorney, Hines had an attorney-client relationship with the City which required him to maintain the confidentiality of information learned during the attorney-client relationship, even after that relationship ended. Because she found that Hines had gained confidential information pertinent to the City employee-dispatchers' claims during his employment, Magistrate Judge Vecchiarelli found that Hines could not represent the dispatchers against the City in a manner which was

---

[4] "FLSA Litigation No. 1" was captioned *Appling v. City of Cleveland*, 1:02cv1151 (Nugent, J.).

-3-

consistent with the Ohio Code of Professional Responsibility, the governing ethical code at the time.[5] Hines did not file objections to Magistrate Judge Vecchiarelli's recommendation, and moved to voluntarily dismiss FLSA Litigation No. 1 before Judge Nugent could address the recommendation. Judge Nugent approved dismissal of FLSA Litigation No. 1 on November 25, 2002.

Hines then referred his clients to Marqueta Tyson ("Tyson"), an attorney in Hampton, Virginia, to pursue the City employee-dispatchers' FLSA claims against the City.  It is undisputed that Hines entered into an <u>oral</u> agreement with Tyson to divide any legal fees recovered from the re-filed action.  It is also undisputed that no written fee-sharing agreement was presented to Hines' former clients, the City employee-dispatchers.

Tyson re-filed the City employee-dispatchers' FLSA lawsuit in December of 2003 ("FLSA Litigation No. 2").[6]  The case was filed in the Cuyahoga County Court of Common Pleas, removed to the Federal District Court for the Northern District of Ohio, assigned to District Court Judge Nugent, then re-assigned to District Judge John Adams.  After several settlement conferences, the parties agreed to settle the case at a settlement conference on July 18, 2003.[7]  On December 15, 2002, the parties filed their proposed settlement agreement, which Judge Adams first approved in a non-document Order on December 22, 2002.  Page 6 of the settlement agreement includes the following

---

[5]  The Ohio Code of Professional Responsibility was replaced by the Model Rules of Professional Conduct on August 1, 2006, well after the conduct at issue in this case occurred.

[6]  "FLSA Litigation No. 2" was captioned *Davila v. City of Cleveland*, 1:02cv2492 (Adams, J.).

[7]  Under the terms of the settlement agreement, the City agreed to pay the City employee-dispatcher plaintiffs $220,000.00 in a lump sum.  Tyson had negotiated a one-third contingency fee, and thus received approximately $73,000.00.  Hines alleges that he and Tyson had agreed to split any fees such that he would receive seventy-five percent of the fee and she would receive twenty-five percent.  As this lawsuit evidences, he has received nothing.

paragraph:

> 10.    The parties agree that Attorney Darryl Hines, former attorney for the Plaintiffs and former Chief Assistant Director of Labor and Employment for the City, shall not share, directly or indirectly, in any of the monies the City pays under this agreement.

*Davila v. City of Cleveland*, 1:02cv2492, Doc. 45-4 at 6 (N.D. Ohio 2002).  This paragraph of the settlement agreement is at the heart of this case.

### B.    TIMELINE

Paragraph 10 of the settlement agreement spawned multiple civil cases and post-judgment motions in FLSA Litigation No. 2.  For the sake of both completeness and efficiency, the following is a timeline of the relevant history.

| Date | Event |
|------|-------|
| 9/25/00 | Hines begins his employment with the City Law Department, as Chief Assistant Director of Law for the Labor & Employment Section; |
| 11/16/01 | Hines ends his employment with the City; |
| 6/18/02 | Hines files FLSA Litigation No. 1 in Cuyahoga County; it is removed to the Northern District of Ohio before Judge Nugent as *Appling et al. v. City of Cleveland et al.*, 02cv1151; |
| 7/18/02 | The City moves to disqualify Hines as the attorney for plaintiffs in FLSA Litigation No. 1; |
| 10/10/02 | Magistrate Judge Vecchiarelli conducts a hearing on the City's motion to disqualify Hines; |
| 11/7/02 | Magistrate Judge Vecchiarelli issues her Report & Recommendation ("R&R") recommending disqualification of Hines; |
| 11/20/02 | Hines voluntarily dismisses FLSA Litigation No. 1 without objecting to the R&R; |
| 12/19/02 | Attorney Tyson files FLSA Litigation No. 2 on behalf of Hines' former City employee-dispatcher clients in Cuyahoga County; it is removed to the Northern District of Ohio before Judge Nugent as *Davila et al. v. City of Cleveland et al.*, 02cv2492; re-assigned to Judge Adams; |

| 7/18/03 | Settlement agreement is reached in FLSA Litigation No. 2 at a settlement conference (Doc. 38, *Davila*, 02cv2492); |
|---|---|
| 12/22/03 | Settlement agreement approved by Judge Adams in non-document order (Doc. 46, *Davila*, 02cv2492); |
| 1/5/04 | Hines writes a letter to Tyson regarding his objections to paragraph 10 of the settlement agreement; |
| 1/20/04 | Hines files *Hines v. Tyson*, No. CV-04-520058 in the Cuyahoga County Court of Common Pleas ("Hines' Case No. 1"); |
| 1/21/04 | Settlement agreement approved again by Judge Adams in a non-document order (Doc. 53, *Davila*, 02cv2492); |
| 3/24/04 | Hines files *Hines v. Chandra*, No. CV-2004-03-1761 in the Summit County Court of Common Pleas ("Hines' Case No. 2"); |
| 5/24/04 | Hines files a Motion to Intervene in FLSA Litigation No. 2 before Judge Adams (Doc. 58, *Davila*, 02cv2492); |
| 6/28/04 | Hines files a Motion to Withdraw his Motion to Intervene in FLSA Litigation No. 2 before Judge Adams (Doc. 62, *Davila*, 02cv2492); |
| 7/9/04 | Judge Adams conducts a hearing on all pending motions in FLSA Litigation No. 2, including Hines' Motion to Withdraw his Motion to Intervene; Hines does not attend the hearing; |
| 7/12/04 | Hines voluntarily dismisses his case in Summit County, Hines' Case No. 2 -- *Hines v. Chandra*, No. CV-2004-03-1761; |
| 7/16/04 | Judge Adams issues an Order granting Hines' Motion to Withdraw his Motion to Intervene in FLSA Litigation No. 2 (Doc. 77, *Davila*, 02cv2492); |
| 11/8/04 | City Law Director Subodh Chandra files a grievance against Hines with the Office of Disciplinary Council of the Supreme Court of Ohio ("Disciplinary Council"), Grievance No. A5-0135; |
| 2/28/05 | Hines files a grievance against Chandra and Monegan with the Disciplinary Council, Grievance No. 0503039 RFA; |
| 3/10/05 | Chandra's Grievance against Hines (Grievance No. A5-0135) is dismissed by the Disciplinary Council; |
| 7/12/05 | Hines files *Hines v. Chandra*, No. CV-05-567330, in the Cuyahoga County Court of Common Pleas ("Hines' Case No. 3"); |
| 7/13/05 | Hines' Grievance against Chandra and Monegan (Grievance No. 0503039) is dismissed by the Disciplinary Council; |

-6-

| 7/22/05 | Hines' Case No. 3, *Hines v. Chandra*, No. CV-05-567330, is removed to the Northern District of Ohio before Judge O'Malley as Case No. 05cv1836; |
|---|---|
| 8/31/05 | The Cuyahoga County Court of Common Pleas issues Arbitration Order & Award in Hines' Case No. 1, *Hines' Tyson*, Case No. CV-04-520058, finding that Hines is barred from receiving any portion of the settlement proceeds by the Ohio Code of Professional Responsibility and Judge Adams' order approving the settlement in FLSA Litigation No. 2; |
| 11/2/05 | The arbitration Order in Hines' Case No. 1, *Hines v. Tyson*, Case No. CV-04-520058 (Cuyahoga County), is vacated and the case is set for trial; |
| 11/22/05 | Hines' Case No. 3, *Hines v. Chandra*, 05cv1836 (N.D. Ohio), is dismissed without prejudice by Judge O'Malley as unripe; |
| 9/6/06 | Hines files *Hines v. Chandra*, No. CV-06-598904 in the Cuyahoga County Court of Common Pleas; the case is removed to the Northern District of Ohio and ultimately assigned to Judge O'Malley as this case – Case No. 06cv2233 ("Hines' Case No. 4"); |
| 10/16/06 | Hines Case No. 1, *Hines v. Tyson*, Case No. CV-04-520058, is dismissed by the Cuyahoga County Court of Common pleas for failure to prosecute when Hines fails to appear at scheduled trial; |
| 5/17/07 | Judge O'Malley remands Hines' claims against Tyson in Hines' Case No. 4 to the Cuyahoga County Court of Common Pleas as Case No. CV-06-598904; |
| 10/26/07 | Judge Peter J. Corrigan of the Cuyahoga County Court of Common Pleas grants Defendant Tyson's motion for summary judgment as to the remanded claims in Hines Case No. 4, Case No. CV-06-598904, holding that recovery of the fees at issue would be pursuant to an illegal contract. |

Obviously, the dispute over the impact of paragraph 10 of the settlement agreement has a rich history and is in dire need of final resolution. Although each lawsuit has a unique procedural history and substantive nuances, in essence, the Complaint in each case alleges that the defendants (*e.g.*, the City, Chandra, and the individual City Defendants) unlawfully interfered with Hines' right to be paid for his representation of the City employee-dispatchers by including paragraph 10 in the settlement agreement and insisting upon its enforcement.

C.    **PROCEDURAL HISTORY OF <u>THIS</u> LAWSUIT – *i.e.*, HINES' CASE NO. 4**

Briefly, the Court will provide some additional details regarding the procedural history of this case, Hines' Case No. 4.

1.    **Brief Summary of Proceedings**

As the above Timeline indicates, this case was originally filed in the Cuyahoga County Court of Common Pleas and was removed to the Northern District of Ohio on September 18, 2006.  (Doc. 1.)  On February 13, 2007, Hines filed a motion to amend the complaint (Doc. 10), as well as a copy of the Proposed Amended Complaint (Doc. 11).   On March 20, 2007, the Court held a Case Management Conference ("CMC").  At the CMC, the Court established a schedule for the case and ruled on several pending motions.  (Doc. 18.)  In particular, the Court (1) ordered Hines to show cause why his claims against Tyson and her law firm ("the Tyson Defendants") should not be dismissed for lack of jurisdiction; (2) denied Hines' effort to amend the complaint to assert claims against the individual City Defendants in their official capacities; and (3) clarified that the claims in the Amended Complaint are asserted against Defendants Monegan, Gibbons, and Glending in their individual capacities only, and against Defendant Chandra in his official capacity only.

After briefing in connection with the Court's show cause Order, the Court remanded the claims against the Tyson Defendants to the state court and expressly stated that "the only claims that remain in the lawsuit are Plaintiff's state and federal claims against the City of Cleveland and the individual City officials and employees."  (Doc. 30.)  In addition, the Court denied Hines' second motion to amend the complaint (Doc. 20), making the Amended Complaint (Doc. 11) the operative complaint in this case, as modified by the Court's subsequent Orders.  (Docs. 29-30.)  The Defendants filed an Answer to the Amended Complaint on April 3, 2007.  (Doc. 21.)

-8-

It is against this backdrop that the Defendants filed their motion for judgment on the pleadings and motion for summary judgment seeking dismissal of all of Hines' remaining claims.

### 2.    Hines' Claims in this Lawsuit

The Amended Complaint (Doc. 11) asserts nine claims against the City Defendants arising from the facts and circumstances discussed above.  The City Defendants' motions for judgment on the pleadings and summary judgment seek dismissal of all nine claims.  Hines opposes both motions vigorously (to say the least).

The nine remaining[8] claims in this lawsuit may be summarized as follows:

### i.    Count 1 – Tortious Interference with Contract (with Former Clients)

In Count 1, Hines alleges that the City Defendants tortiously interfered with Hines' contractual relationship with his former clients, the City employee-dispatchers, by causing them to include paragraph 10 in the settlement agreement.  He alleges that, in doing so, the individual City Defendants were acting outside the scope of their employment and with reckless disregard for his rights.  (Doc. 11 ¶ 15-17.)

### ii.    Count 2 – Tortious Interference with Business Relationship (with Former Clients)

In Count 2, Hines alleges that the City Defendants tortiously interfered with his business relationship with his former clients because paragraph 10 unjustifiably prohibits the City employee-dispatchers from paying Hines from the monies received from the settlement without regard to whether the payment relates to services rendered in connection with the City employee-dispatchers' FLSA claims.  Again, he alleges conduct outside the scope of employment and malicious intent.  (*Id.*

---

[8]  Hines claims against Tyson and her law firm (Counts 9 and 10) were dismissed on May 17, 2007.  (Docs. 29-30.)

¶ 18-20.)

### iii.  Count 3 – 42 U.S.C. § 1983: Taking without Due Process & Equal Protection

In Count 3, Hines alleges that the City Defendants' acted under color of state and municipal law when they entered into a settlement agreement prohibiting him from receiving compensation for services rendered to his former clients, including services unrelated to the subject of the settlement. He specifically alleges as follows:

> Defendants' actions violated Plaintiff's rights guaranteed under the United States Constitution by taking his property and depriving him of certain property rights and interests without due process of law and, as such violated the Plaintiff's procedural and substantive due process rights.  Defendants further deprived the Plaintiff of his right to pursue liberty and happiness and equal protection of the laws, as guaranteed to United States citizens under said U.S. Constitution and its amendments.

(*Id*. ¶ 22.)

### iv.  Count 4 – Civil Conspiracy

In Count 4, Hines alleges that the individual City Defendants conspired to interfere with his contractual and business relationship with his former clients.  He alleges that the conspiracy was intended to punish him for purportedly unethical conduct by depriving him of attorneys' fees earned in the course of representing the City employee-dispatchers.  Hines contends that only the Ohio Supreme Court has the authority to punish attorneys for unethical conduct.  (*Id*. ¶ 24-26.)[9]

### v.  Count 5 – Public Policy

In Count 5, Hines alleges a violation of the Ohio public policy recognizing the right of an attorney to recover fees for services rendered upon the termination of the attorney-client relationship

---

[9]  Of note, the Ohio Supreme Court has since suspended Hines' license to practice law in Ohio for other reasons.  This does not affect Hines' ability to represent himself *pro se*, but it is ironic given his arguments in this case.

-10-

prior to the conclusion of the matter which is the subject of the representation (*i.e.*, *quantum meruit*). Further, Hines alleges that the City Defendants' conduct violates the Ohio public policy entrusting attorney discipline to the Ohio Supreme Court rather than private enforcement actions by individual attorneys.  (*Id.* ¶ 27-30.)

> vi. **Count 6 – Intentional Infliction of Emotional Distress against Defendant Chandra**

In Count 6, Hines alleges that Defendant Chandra's conduct was intended to cause him emotional distress, and did so.  In particular, he alleges that Chandra's multiple complaints to the Ohio Supreme Court Disciplinary Counsel regarding his representation of the City employee-dispatchers were unfounded, and intended to harass him and cause emotional harm.  (*Id.* ¶ 31-34.)

> vii. **Count 7 – 42 U.S.C. § 1983: Against the City, Policy & Practice**

Count 7 is a *Monell*[10] claim, alleging that the City of Cleveland had in place a policy and practice used to deprive Hines of his constitutional rights, as described in Count 3.  (*Id.* ¶ 35-36.)

> viii. **Count 8 – Tortious Interference with Contract and Business Relationship (with Tyson)**

Hines alleges the same claims in Count 8 as he did in Counts 1 and 2, but Count 8 relates to his alleged contract and business relationship with Tyson rather than his former clients, the City employee-dispatchers.  (*Id.* ¶ 37-43.)

> ix. **Count 11 – 42 U.S.C. § 1983: First Amendment Violation**

In Count 11, Hines alleges that the individual City Defendants filed complaints with the Ohio Disciplinary Counsel and insisted on the inclusion of paragraph 10 in the settlement agreement in retaliation for his engagement in conduct protected by the First Amendment.  More specifically, he

---

[10] *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658 (1978).

alleges that his representation of the City employee-dispatchers in the FLSA litigation was protected conduct because any duty of confidentiality he may have owed to the City – his former client – was trumped by his entitlement to disclose client confidences regarding the City's criminal activity. (*Id.* ¶ 53-57.)

### D.    PROCEDURAL POSTURE

This matter is before the Court on numerous motions. Most prominent, however, are two dispositive motions filed by the Defendants – their motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and their motion for summary judgment pursuant to Rule 56 of the same rules.[11] Because at this point in the proceedings, the Defendants have submitted mountains of extrinsic evidence, the Court is addressing this matter on information outside the pleadings and it is appropriate for the Court to resolve the motions under the summary judgment standard. *See* Fed. R. Civ. P. 12(c). Under the particular circumstances of this case, there is no reason for the Court to analyze the motions independently when the motion for summary judgment seeks dismissal of all claims and expressly incorporates the arguments advanced in connection with the motion for judgment on the pleadings. *Cf. Cavaliers Operating Co., L.L.C. v. Ticketmaster*, No. 08cv240, 2008 WL 4449466, at *7-9 (N.D. Ohio Sept. 30, 2008) (O'Malley, J.).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

Rule 56(e) specifies the materials properly submitted in connection with a motion for

---

[11]  Unless otherwise specified, all references to a "Rule" in this Opinion & Order refer to the Federal Rules of Civil Procedure.

summary judgment:

> (1) *In General*.  A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify to the matters stated.  If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.  The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.
>
> (2) *Opposing Party's Obligation to Respond*. When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555, 560 (6th Cir. 2004).  A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that

-13-

party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322.  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).  The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact.  *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992).  The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts.  *Id*.

## III.  DISCUSSION

### A.  Hines' Rule 56(f) Motion

Before analyzing the motion for summary judgment, the Court must resolve Hines' Rule 56(f) Motion, in which he contends that he cannot adequately respond to the City Defendants' motion for summary judgment.  Rule 56(f) provides:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

Fed. R. Civ. P. 56(f).

The Court finds that Hines' Rule 56(f) motion (Doc. 53) is not well-taken.  First, the discovery requests on which his motion is premised were submitted out-of-rule, and, therefore, the City Defendants did not have an obligation to respond after the close of discovery.  Hines had a fair opportunity to obtain the discovery requested within the prescribed time-period, and failed to do so.  Second, although Hines argues that he cannot adequately respond because of the pending state court actions, the Court has already denied Hines' requests to stay this case pending resolution of his state

-14-

actions on the grounds that this case can proceed in spite of the pendency of the state court actions.

Finally, even if the first two reasons did not independently justify denial of the Rule 56(f) motion,

the information requested could not alter the Court's resolution of the legal issues raised in the

motion for summary judgment.   Accordingly, Hines' Rule 56(f) Motion (Doc. 53) is hereby

**DENIED**.

The Court now addresses each of the nine remaining counts and, ultimately, concludes that

summary judgment in favor of the Defendants is appropriate with respect to each.

### B.     Tortious Interference Claims – Counts 1, 2, and 8

Hines' first, second, and eighth count allege tortious interference with contract and business

relationship.  Although each claim is legitimately distinct, all three advance the same argument: that

the Defendants tortiously interfered with Hines' contract and business relationship with his former

clients (the City employee-dispatchers) and his fee-splitting oral contract with Tyson.

The parties agree that *Fred Siegel Co., LPA v. Arter & Hadden*, 707 N.E. 2d 853, 858 (Ohio

1999), provides the standards applicable to the tortious interference claims in this case.  In *Fred*

*Siegel*, the Ohio Supreme Court set forth the elements of tortious interference[12] as follows:

1.      existence of a contract (or business relationship);
2.      knowledge of the contract (or business relationship);
3.      intentional interference;
4.      lack of justification; and
5.      damages.

---

[12]  *Fred Siegel* addressed a tortious interference with <u>contract</u> claim, as opposed to interference with a business relationship generally.  707 N.E. 2d at 858.  The parties apply the *Fred Siegel* elements to both types of tortious interference claims, however, and the Court finds no material distinction between the elements for purposes of this lawsuit.

The fourth element is dispositive in this case.[13]  The Defendants contend that their conduct with respect to Hines' contracts and relationships with his former clients and Tyson was justified. In sum, the Defendants justify their conduct as an effort to prevent Hines' from engaging in unethical conduct as an attorney.  As the Ohio Supreme Court stated in *Fred Siegel*, "establishment of the fourth element . . ., lack of justification, requires proof that the defendant's interference . . . was improper."  707 N.E. 2d at 858.  The issue with respect to Counts 1, 2, and 8 is whether the Defendants' conduct – specifically, insisting upon the inclusion of paragraph 10 in the settlement agreement, filing the motion to disqualify Hines in FLSA Litigation No. 1, and asserting grievances against Hines with the Disciplinary Council – was improper.

First, the Court finds nothing improper about the motion to disqualify or informing the Disciplinary Council of Hines' potential conflict of interest.  Hines acknowledged in his motion to intervene[14] that his representation of the City employee-dispatchers was tainted by a conflict of interest because, at the hearing on the motion to disqualify, Hines learned that his subordinate at the City Law Department had knowledge of facts pertinent to the City employee-dispatchers' claims while Hines was his supervisor.  In his motion to intervene, Hines explains that he did not object to Magistrate Judge Vecchiarelli's recommendation because he recognized that the concept of "vertical responsibility" imputed his subordinate's knowledge to him, thus creating a conflict of interest. Accordingly, there is clearly nothing improper about the Defendants' motion to disqualify Hines.

---

[13]  The parties do not address the other elements, nor are they subject to legitimate dispute, except as noted below regarding the first element.

[14]  Hines objects to the Defendants' references to filings in FLSA Litigation Nos. 1 and 2 in support of their motion for summary judgment as improper under Rule 56.  (Doc. 59.)  This objection is not well-taken because the Court may take judicial notice of the record of the case before it or closely related cases.  *Cavaliers*, 2008 WL 4449466, at *7-9.  Accordingly, Hines objections (Doc. 59) are **OVERRULED**.

-16-

Similarly, the governing ethical code at the time – the Ohio Code of Professional Responsibility – states that "[a] lawyer shall not . . . violate a Disciplinary Rule . . .", which included rules regarding maintaining the confidences of former clients (*i.e.*, the City) and conflicts of interests.  Ohio Code of Professional Responsibility, DR 1-102(A)(1).  Further, DR 1-103(A) required the following: "A lawyer possessing unprivileged knowledge of a violation of DR 1-102 shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation."  *Id*.  In light of this professional duty, the Defendants' decision to raise Hines' representation of City employees against his former employer, the City, with the Disciplinary Council was not improper.

Hines' chief argument, however, is that the Defendants' insistence on including paragraph 10 in the settlement agreement was improper.  Hines contends that paragraph 10 represents an improper effort to circumvent the Ohio Supreme Court's exclusive authority to discipline attorneys for professional misconduct.

Although this argument has some facial appeal, under DR 2-107 of the Ohio Rules of Professional Responsibility an attorney must inform his clients of any fee-splitting arrangement and obtain the client's written consent to the arrangement.  It is undisputed that Hines did not obtain the City employee-dispatchers' written consent to his oral agreement to split fees with Tyson.[15]  Thus, Hines' fee-splitting arrangement is a violation of the Ohio Code of Professional Responsibility.  *See Office of Disciplinary Council v. Zingarelli*, 729 N.E. 2d 1167, 1175 (Ohio 2000).  As noted by the Defendants, allowing Hines to recover fees pursuant to an unethical agreement would thwart the purpose of the state's professional code and contradict public policy.  It is an unexceptional

---

[15]  In fact, there is apparently no written record of the terms of the fee-splitting agreement between Hines and Tyson, and Hines does not even argue that he had <u>any</u> agreement regarding fee splitting – oral or written -- with his clients, the City employee-dispatchers.

proposition of law that an attorney who is conflicted-out of representation may not recover fees for services rendered prior to withdrawal without his former clients' written consent to such an arrangement. *See Dragelevich v. Kohn, Milstein, Cohen & Hausfeld*, 755 F. Supp. 189, 192 (N.D. Ohio 1990); *Wilson v. Lynch & Lynch Co., L.P.A.* 651 N.E. 2d 1328, 1332 (Ohio Ct. App. 1994); *see also Mills v. U.S.*, No. C-3-95-64, 1997 WL 1764758, at *2 (S.D. Ohio Apr. 16, 1997) (finding division of fees enforceable while assuming such a contract may be <u>unenforceable</u> if it violates DR 2-107(A)(1)).[16] In fact, the Cuyahoga County Court of Common Pleas granted summary judgment in favor of Tyson on the remanded claims in this case on these grounds.[17]

> PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS DENIED. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IS GRANTED. NO QUESTION OF MATERIAL FACT EXISTS THAT PLAINTIFF'S REPRESENTATION WAS CONTRARY TO LAW. THEREFORE, PLAINTIFF CANNOT RECOVER FEES PURSUANT TO AN ILLEGAL CONTRACT. JUDGMENT FOR DEFENDANT. CASE DISMISSED. COURT COST ASSESSED TO THE PLAINTIFF(S).

---

[16] Ohio courts have recognized that an attorney who violates DR 2-107 may not use this violation to <u>defend</u> against a lawsuit seeking recovery of fees by arguing that the fee-splitting agreement is void. *King v. Housel*, 556 N.E. 2d 501, 504 (Ohio 1990) ("The rule is not meant to be used as a shield by an attorney in violation thereof to avoid enforcement of a valid fee agreement.") This is not the case here, as Hines is the attorney who violated DR 2-107 and is seeking to recover under the fee-splitting agreement. It was Hines' responsibility to obtain written consent to the fee-splitting arrangement. *Id.* If anything, Tyson could use the rule in *King* <u>against</u> Hines, but it does not affect the propriety of paragraph 10 of the settlement agreement. Clearly, the Court may consider applicable law in the jurisdiction governing the case.

[17] The Defendants filed a motion to submit the *Journal Entry* in Case No. CV-06-598904 as a supplement to their motion for summary judgment. (Doc. 69.) Hines opposed the motion to supplement and sought leave to file further briefing on the issue. (Docs. 72-74.) The Court granted the Defendants' motion to supplement and granted Hines' motion to file a supplemental brief, but expressly refused to "address the propriety of use of [the] judgment entry as an exhibit at this point in time." (Docket, non-document Order dated November 8, 2007.) The Court now finds that it is appropriate to consider the *Journal Entry*, at least as an expression of directly on-point Ohio authority on the issue of the enforceability of a fee-splitting arrangement in violation of DR 2-107(A).

-18-

(Doc. 69-2, *Journal Entry* in Case No. CV-06-598904, Cuyahoga County Court of Common Pleas, 10/25/07.)

Hines doggedly argues throughout the briefing in this case that only the Ohio Supreme Court has the authority to discipline attorneys, and, therefore, it was improper for the parties to the settlement agreement to include a provision in the agreement essentially "punishing" him for alleged violations of the professional code. Likewise, he contends that it was improper for the federal district court to recommend his disqualification in FLSA Litigation No. 1 and to approve a settlement including such a term in FLSA Litigation No. 2. First, this argument is based on a false premise – it is a well-established principle of Ohio law that any court has the inherent authority to regulate the conduct of attorneys who appear before it, and to disqualify an attorney for ethical violations. *See Mentor Lagoons, Inc. v. Rubin*, 510 N.E. 2d 379, 382 (Ohio 1987). Thus, Judge Nugent in FLSA Litigation No. 1 clearly would have had the authority to resolve the motion to disqualify Hines consistent with Magistrate Judge Vecchiarelli's recommendation that a conflict of interest existed and precluded representation. Second, Hines mischaracterizes paragraph 10 as "punishment." More appropriately, paragraph 10 is an accurate expression of the policy embodied in DR 2-107, which would independently preclude Hines from sharing in any portion of the settlement proceeds. Consequently, the district court's approval of paragraph 10 is unremarkable and does not implicate attorney discipline.

In sum, it was not improper for the Defendants to insist upon the inclusion of paragraph 10 in the settlement agreement. Paragraph 10 is justified by the fact that Hines is not entitled to recover fees pursuant to a contract in violation of the applicable rules of professional conduct. In fact, paragraph 10 arguably adds nothing to the settlement agreement because, even in its absence, Hines

-19-

would not be entitled to any portion of the settlement proceeds in light of his undisputed failure to obtain his former clients' written consent to the fee-splitting agreement (*i.e.*, his violation of DR 2-107(A)).[18] Accordingly, Hines' tortious interference claims (Counts 1, 2, and 8) fail as a matter of law and are dismissed.

### C. PUBLIC POLICY CLAIM

The Court's analysis of Hines' tortious interference arguments in the section above encompasses his defense of his public policy claim, Count 5 in the Complaint. Specifically, although a discharged attorney has a right to recover fees for services rendered under certain circumstances, an attorney who violates DR 2-107 is not entitled to such recovery for the reasons discussed above. (*See supra*.) Accordingly, Count 5 of the Complaint fails as a matter of law and is dismissed.

### D. 42 U.S.C. § 1983 CLAIMS (COUNTS 3, 7 & 11)

#### 1. Absolute Immunity

The individual City Defendants – Gibbons, Monegan, and Glending -- argue that Hines' § 1983 claims against them are barred by the absolute immunity doctrine. The absolute immunity doctrine provides government officials with a complete defense to liability under certain narrow circumstances in the interest of public policy. *See Butz v. Economou*, 438 U.S. 478, 506-08 (1978). That is, sound public policy dictates that judges, government advocates, and, *e.g.*, witnesses must be able to perform their work without the constant threat of a lawsuit looming over them. *Id.*; *Reed v. Burns*, 500 U.S. 478, 494 (1991) (stating that absolute immunity should prevent the threat of litigation from interfering with "conduct closely related to the judicial process.") The Supreme

---

[18] Alternatively, the first element of Hines' tortious interference claims – existence of a contract – is not satisfied because the oral fee-splitting agreement with Tyson is void as violative of DR 2-107.

Court has adopted the "functional analysis" for absolute immunity.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (omitting quotations); *Imbler v. Pachtman*, 424 U.S. 409 (1976).  Under the functional analysis, the court analyzes "the nature of the function performed, not the identity of the actor who performed it."  *Forrester v. White*, 484 U.S. 219, 229 (1988).  Absolute immunity, therefore, applies when government officials "are engaged in prosecutorial or advocative functions and not when they are performing administrative or investigative functions."  *Bembenek v. Donohoo*, 355 F. Supp. 2d 942, 951 (E.D. Wis. 2005) (citing *Kalina v. Fletcher*, 522 U.S. 118, 126-27 (1997)).  Anything that occurs <u>in</u> court or is usually performed by a prosecutor is typically considered an advocative function.  *Id*.  The degree of choice the government official has with respect to the action in question is also a key factor – the less discretionary the conduct the more likely it is protected advocacy.  *Id*. (citing *Burns*, 500 U.S. at 494.).  Engaging in settlement negotiations is usually advocative because it is analogous to a prosecutor engaging in plea bargaining.  *Id*.; *Mendenhall v. Goldsmith*, 59 F.3d 685, 691 (7th Cir. 1995).  The burden of establishing absolute immunity is on the government officials.  *Burns*, 500 U.S. at 478.

Hines argues that the absolute immunity doctrine does not apply to the individual City Defendants because Gibbons and Monegan were performing administrative (as opposed to advocative) functions and Glending is a party, not an advocate.  With respect to Gibbons and Monegan specifically, he argues that the predicate conduct is related to enforcement of the settlement agreement and, therefore, occurred after the litigation concluded – *i.e.*, outside the context of litigation.  With respect to Glending, he argues that the Commissioner of the Convention center merely signed the settlement agreement as an agent of the City, and never acted in a role protected by the absolute immunity doctrine.

Absolute immunity is a close question in this case.  The Court is mindful, however, of the Sixth Circuit's admonition that absolute immunity is an exceptional doctrine; normally, qualified immunity is sufficient to serve the policy interests underpinning absolute immunity.  *See Cullinan v. Abramson*, 128 F.3d 301, 308-09 (6th Cir. 1997) (citing *Butz*, 438 U.S. at 507).  Based on the functional analysis, the Court finds that the individual City Defendants were not acting as the "functional equivalent" of prosecutors with respect to the conduct at issue.  *Id*.  The settlement negotiations that led to paragraph 10 occurred out of court, and were not similar to a plea bargain based on the respective positions of the parties – the City paid the City employee-dispatchers to resolve their civil claims against the city.  Most importantly, the individual City Defendant's decision to include paragraph 10 in the settlement agreement was almost purely discretionary.  Accordingly, the Court finds that the individual City Defendants are not entitled to absolute immunity.[19]

### 2.    Due Process Claims Against the Individual City Defendants (Count 3)[20]

In Count 3, Hines alleges deprivations of both substantive and procedural due process in violation of 42 U.S.C. § 1983.  "[T]o state a claim under 42 U.S.C. § 1983, [Hines] must prove that the [Defendants], while acting under color of state law, deprived [him] of a right secured by the Constitution or the laws of the United States."  *Thomas v. Cohen*, 304 F.3d 563, 568 (6th Cir. 2001)

---

[19]  The City Defendants did not raise qualified immunity in their motion for summary judgment or their motion for judgment on the pleadings.  Therefore, despite the fact that they subsequently raised it (without thoroughly analyzing it) in their reply brief, the City Defendants have waived the qualified immunity defense.  Accordingly, Hines' objection addressing this issue is **SUSTAINED**.  (Doc. 57.)

[20]  Count 3 alleges claims against the individual City Defendants in their individual capacities.  Count 7 alleges a *Monell* policy and practice claim against the City.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (explaining the difference between a § 1983 action against government employees in their official capacity and their individual capacity).

(citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  Hines cannot satisfy this standard.

### i.      Substantive Due Process

Hines first argues that the individual City Defendants' conduct violates substantive due process.  The Sixth Circuit has defined substantive due process as:

> "The doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process."

*Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992) (omitting citations).  The Sixth Circuit has limited substantive due process to a narrow range of cases, including cases involving action on the part of the state or local government which "shocks the conscience" and "arbitrary and capricious" state or local government action.  *Id*.  An example of a substantive due process violation that shocks the conscience is deprivation of the right to maintain custody of biological children.  *Vinson v. Campbell County Fiscal Court*, 820 F.2d 194, 201 (6th Cir. 1987).  The Sixth Circuit, moreover, has stated that the "shocks the conscience" variety of substantive due process claim is problematic outside the context of excessive force.  *Pearson*, 961 F.2d at 1216.  Similarly, substantive due process only applies to actions on the part of the state that interfere with a fundamental right, or which are so illogical that they cannot survive the extremely forgiving rational basis test, *i.e.*, they are arbitrary and capricious.  *See LRL Properties v. Portage Metro. Housing Auth.*, 55 F.3d 1097, 1115-16 (6th Cir. 1995).  For purposes of substantive due process, "fundamental rights" do not include garden-variety property or liberty interests, which are appropriate for <u>procedural</u> due process analysis.  *Id*. (citing *Stratford v. State-House*, 542 F. Supp. 1008, 1015-16 (E.D. Ky. 1982) (discussing at length the parameters of substantive due process in the Sixth Circuit)); *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (citing *Charles v. Baesler*, 910

-23-

F.2d 1349, 1353 (6th Cir. 1990)).

Hines has not alleged a substantive due process violation under these standards.  At best, he is alleging that the state deprived him of his right to contract or his right to practice law by filing a motion to disqualify him from representation in FLSA Litigation No. 1 and by insisting on the inclusion of paragraph 10 in the settlement agreement.[21]  These actions were based on the individual City Defendants' belief that Hines was not legally entitled to receive any portion of the settlement proceeds.  The reasonableness of this belief was confirmed by Magistrate Judge Vecchiarelli's recommendation – after a full hearing on the issue – that Hines should be disqualified from representation in light of his prior employment with the City and exposure to facts relevant to his representation.  Consequently, this is not an example of action on the part of the state that "shocks the conscience."  Likewise, this case does not involve a fundamental right typically appropriate for substantive due process analysis, and the individual City Defendant's actions are rational based on the apparent conflict of interest, as well as Hines' violation of DR 2-107.

### ii.        Procedural Due Process

When the state interferes with an individual's right to life, liberty or property, procedural due process requires the state to provide the person with notice of the deprivation and a hearing.  *See e.g.*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (6th Cir. 1985).  Thus, the threshold question is whether the state deprived Hines' of a liberty or property interest, and, if so, when.  *See Buchanan v. Apfel*, 249 F.3d 485, 490 (6th Cir. 2001).  While Judge Peter Corrigan's Order granting summary judgment in the Cuyahoga County Court of Common Please Case No. 06-598904 deprives Hines of the right to recover any portion of the settlement fees, the decision is expressly based on

---

[21]  This is also assuming a deprivation actually occurred, which it did not, as discussed in the section analyzing procedural due process.

basic principles of contract law.  In other words, the rights at issue are contract rights. Although the Sixth Circuit has held that contract rights may be property rights, the contract right must be enforceable.  As discussed above, all of the courts that have addressed this issue have found that Hines does not have an enforceable contract right to settlement proceeds.  Accordingly, his procedural due process claim fails at the outset because he has not been deprived of a due process right.

Further, Hines has availed himself of the available state remedies by challenging paragraph 10 in the Ohio courts.  As Justice O'Connor explained,

> [I]n challenging a property deprivation, the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate. . . . When adequate remedies are provided and followed, no uncompensated taking or deprivation of property without due process can result.

*Hudson v. Palmer*, 468 U.S. 517, 539 (1984) (O'Connor, J., concurring).   Hines filed a lawsuit asserting causes of action under state law claiming a contractual right to recover a portion of the settlement proceeds in FLSA Litigation No. 2.  The state provides the <u>judicial</u> process to determine the rights of parties to a contract, including contracts involving the state, and Hines has not established that the available state law remedies are inadequate.  Simply put, Hines has had his day in court, and the court found that no deprivation of life, liberty or property has occurred.

### 3.    *Monell* Claim (Count 7)

Under *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658 (1978), the City may be held liable under § 1983 if the City had in place a "policy" or "custom" that caused Hines' injury. Section 1983 does not impose liability on the City for the acts of its employees under the doctrine of *respondeat superior*.  *Thomas v. City of Chattanooga*, 398 F.3d 426, 432-33 (6th Cir. 2005); *City of Canton v. Harris*, 489 U.S. 378, 379 (1989).  "[T]o satisfy the *Monell* requirements [Hines] must

-25-

identify the policy, connect the policy to the [City] itself and show that particular injury incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir.1993). Vague or conclusory allegations of a municipal policy and practice are not sufficient to state a *Monell* claim. *See Lanier v. Bryant*, 332 F.3d 999, 1007 (6th Cir. 2003); *see also Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir.2008) ("conclusory statements are not sufficient to survive any motion for summary judgment"); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 584 (6th Cir.1992) (same).

The Defendants argue that Hines' allegations of a municipal policy and practice are vague and conclusory at best. Hines contends that Chandra, a policymaker, pursued a policy of punishing lawyers for perceived violations of ethical rules by insisting upon the inclusion of paragraph 10 in the settlement agreement. Assuming Hines has adequately alleged a policy or custom under *Monell*,[22] he has not provided evidence of an unconstitutional policy sufficient to survive summary judgment. As discussed above, paragraph 10 is not the result of an effort to punish Hines; it is an expression of Ohio law, which prohibits him from receiving fees pursuant to a fee-splitting agreement that violates DR 2-107. Accordingly, Hines' *Monell* claim fails as a matter of law.

### 4. First Amendment Claim (Count 11)

In his third § 1983 claim, Hines alleges that the individual City Defendants' conduct deprived him of his First Amendment right to reveal information obtained in the context of the attorney-client relationship regarding the City's alleged violation of the FLSA with respect to the City employee-

---

[22] Because the Supreme Court has held that a single incident of unconstitutional behavior can support a *Monell* claim when proof of the incident includes proof of a policy that can be attributed to a single policymaker, Hines' allegations are probably sufficient to state a *Monell* claim for pleading purposes. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *Bills v. Aseltine*, 958 F.2d 697, 708 (6th Cir. 1992).

dispatchers.  He is essentially alleging that the City Defendants retaliated against him for exercising his First Amendment rights.

In their motion for summary judgment, the City Defendants argue, *inter alia*, that this claim fails as a matter of law because an attorney does not have a First Amendment right to reveal client confidences, except under specific circumstances not at issue here.  (Doc. 52-2 at 33-35.)  Hines has not addressed this argument or defended this particular claim in any of his briefs.  *Fulson*, 801 F. Supp. at 4 (noting that it is the non-movant's duty to point to specific facts in the record establishing a genuine issue of material fact).  The Court finds the unopposed arguments in the City Defendants' motion (Doc. 52-2) persuasive, and, accordingly, grants summary judgment with respect to this claim.

### E.      EMOTIONAL DISTRESS (COUNT 6)

Hines alleges that Defendant Chandra harassed him by filing meritless grievances with the Disciplinary Council intended to cause him emotional distress.  "Extreme and outrageous conduct" is an element of intentional infliction of emotional distress in Ohio.  *Russ v. TRW, Inc.*, 453 N.E. 2d 1076, 1082 (Ohio 1991). As discussed above in the analysis of the tortious interference claims, however, the grievances were justified by Hines' apparent conflict of interest as well as his improper fee-splitting agreement with Tyson.  Accordingly, Hines has not presented evidence sufficient to raise a genuine issue of material fact with respect to the "extreme and outrageous conduct" element of his claim.

Even if there is a genuine issue of material fact with respect to the elements of the intentional infliction of emotional distress claim, the City Defendants argue that an absolute privilege attaches to the filing of grievances with the Disciplinary Counsel.  Hines counters that the "litigation"

-27-

privilege does not apply to his claim, which is not based on the charges in the grievance, but the act of filing the grievance.

A complaint against an attorney filed with a grievance committee is part of a judicial proceeding. *Hecht v. Levin*, 66 Ohio St. 3d 458, 465 (Ohio 1993). This Court has held, moreover, that a civil action cannot be based on the filing of such a grievance, so long as the grievance bears some relation to the underlying judicial proceeding. *See In re Commercial Money Center, Inc., Equip. Lease Litig.*, No. 1:02cv16000, 2006 U.S. Dist. Lexis 72159, *127-29 (N.D. Ohio Oct. 3, 2006) (O'Malley, J.) (citing *Hecht* and applying the privilege in the context of a tortious interference claim).[23] Here, Chandra's grievances arose directly out of the FLSA Litigations, in which Hines' representation of current clients against former clients raised the issue of a conflict of interest and an unethical fee-sharing agreement. Accordingly, the Court finds that Hines' intentional infliction of emotional distress is barred by the litigation privilege.

## F.    CIVIL CONSPIRACY (COUNT 4)

The City Defendants argue that Hines' civil conspiracy claim fails as a matter of law for two reasons: (1) the intra-corporate conspiracy doctrine and (2) Hines' failure to establish an underlying tort. The second argument is well-taken and dispositive.[24]

---

[23] In *In re Commercial Money Center*, the Court did not limit the litigation privilege under *Hecht* to the defamation context, as Hines advocates. 2006 U.S. Dist. Lexis 72159, at *129.

[24] Alternatively, the Court finds that Hines' civil conspiracy claim fails under the intra-corporate conspiracy doctrine. For the reasons discussed throughout this opinion, and in the City Defendants' briefs (Docs. 52 and 68), the individual City Defendants are employees of the City and did not act outside the scope of their employment for purposes of the intra-corporate conspiracy doctrine. *See Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 840 (6th Cir. 1994); *Hull v. Cuyahoga Valley Jt. Vocational School Dist. Bd. of Educ.*, 926 F2d 505, 510 (6th Cir. 1991). (Defendant Chandra is not being sued in his individual capacity pursuant to the Court's Order (Doc. 30).)

Hines does not dispute that a civil conspiracy claim requires the plaintiff to establish the elements of an underlying tort, *see Beck v. Prupis*, 529 U.S. 494, 501 (2000), he simply contends that his underlying tort claims survive summary judgment.  (Doc. 61 at 26.)  As discussed above, however, Hines' tort claims cannot survive summary judgment.  Accordingly, his civil conspiracy claim is adrift and must be dismissed as a matter of law.

## IV.     CONCLUSION

For the foregoing reasons, the City Defendants' *Motion for Summary Judgment* (Doc. 52-2) is **GRANTED**.  Accordingly, the remaining claims in this lawsuit – Counts 1, 2, 3, 4, 5, 6, 7, 8, and 11 – are hereby **DISMISSED**.  The City Defendants' *Motion for Judgment as a Matter of Law* (Doc. 47) is **TERMED as moot**.  Further, Hines' *Rule 56(f) Motion* (Doc. 53) is **DENIED**, his objection to the qualified immunity defense (Doc. 57) is **SUSTAINED**, and his objections to the summary judgment exhibits (Doc. 59) are **OVERRULED**.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: February 23, 2009**

-29-